IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-cv-002163-PAC-MEH

SIERRA CLUB and MINERAL POLICY CENTER,

    Plaintiff(s),

v.

EL PASO GOLD MINES, INC.,

    Defendant(s).

---

MEMORANDUM OPINION AND ORDER

---

Patricia A. Coan, United States Magistrate Judge

This is a citizen suit under the Clean Water Act. Jurisdiction exists under 33 U.S.C. §1365(a) and 28 U.S.C. §1331. The parties have consented to determination of this case by a United States Magistrate Judge under 28 U.S.C. §636(c). The matter before the court is Defendant's Motion for Judgment on the Basis of the Doctrine of Collateral Estoppel, filed June 30, 2006.

I.

A.    <u>Case History</u>

The Clean Water Act ("CWA" or "the Act"), 33 U.S.C. §§1251, *et seq.* (2001), makes it unlawful for "anyone to discharge pollutants into the Nation's waters except pursuant to a permit." *Milwaukee v. Illinois*, 451 U.S. 304, 310 (1987); 33 U.S.C. §1311(a), §1342. "Discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters

from any point source."[1]   33 U.S.C. §1362(12).  Section 402 of the Act, 33 U.S.C. §1342, establishes a national pollutant discharge elimination system ("NPDES") and directs the Environmental Protection Agency ("EPA") to issue permits for the discharge of pollutants in accordance with effluent limitations set by the EPA pursuant to 33 U.S.C. §1312.  The CWA empowers citizens to bring civil actions against any person who fails to comply with the requirements of the CWA or with the terms of an NPDES permit.  33 U.S.C. §1365(a) and (f).

The Sierra Club and the Mineral Policy Center filed a citizen suit in federal district court against defendant El Paso Gold Mines, Inc. ("El Paso"), the owner of the El Paso Gold Mine, El Paso shaft and related mineral rights located in Teller County, Colorado. El Paso's property is located within the Cripple Creek Mining District and is included in the mine permit boundary of the Cripple Creek and Victor Gold Mine, an active gold mine permitted by the Colorado Division of Minerals and Geology.  The Roosevelt Tunnel is a six-mile man-made underground tunnel that was constructed to drain water from mines in the Cripple Creek Mining District.   The El Paso shaft is connected to the Roosevelt Tunnel.  A series of underground mine workings are connected to the El Paso shaft. Plaintiffs claim that the El Paso shaft is discharging pollutants (zinc and manganese) into the Roosevelt Tunnel, and from there, into Cripple Creek, a navigable water, without a permit, in violation of the Act.

---

[1] The terms "pollutant," "point source" and "navigable waters" are defined at 33 U.S.C. §1362(6), (7) and (14).

On February 10, 2003, I granted plaintiffs' motion for summary judgment on the issues of plaintiffs' standing to sue and defendant's liability under the Act. Defendants appealed. The Tenth Circuit Court of Appeals reversed the grant of summary judgment, concluding that genuine issues of material fact remained about whether pollutants discharged from the El Paso shaft into the Roosevelt Tunnel were exiting the Tunnel portal into Cripple Creek. *See Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1149-50 (10th Cir. 2005). The case was remanded for further proceedings. El Paso's petition for certiorari review to the United States Supreme Court was denied on April 3, 2006.[2]

B.  The CC&V Action

While the instant action was proceeding, another action involving claims similar to those asserted here was pending before District Judge Krieger, styled as *Sierra Club and Mineral Policy Center v. Cripple Creek and Victor Gold Mining Co.*, Case No. 00-cv–2325-MSK- MEH (hereinafter "the CC&V case"). In the CC&V case, the plaintiffs alleged that the four defendants[3] violated the Clean Water Act by discharging pollutants into navigable waters (Cripple Creek or Fourmile Creek) from six locations within the Cripple Creek Mining District – including the Roosevelt Tunnel portal – in violation of the terms of their discharge permits, or without a discharge permit. The plaintiffs claimed that the

---

[2]El Paso raised two questions in its certiorari petition: (1) [w]hether mere ownership of property, abetted by the hydrologic cycle but without any past or present affirmative act by the owner, constitutes the "discharge" of a pollutant to navigable waters from a point source, thereby subjecting a passive property owner to CWA Section 402 liability; and (2) whether a passive landowner that has never conducted any operations on its property can presently be in "continuous or intermittent violation" of the CWA [*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 64 (1987)] for purposes of federal subject matter jurisdiction under the CWA Section 505(a). The Tenth Circuit answered those questions in the affirmative, as did the district court in addressing plaintiffs' summary judgment motion.

[3]El Paso was not a named defendant in the CC&V action.

3

defendants were liable for pollutants discharged from the El Paso shaft into the Roosevelt Tunnel and from there into Cripple Creek because "[t]he surface features of the El Paso shaft are located within the current mine permit boundary" of CC&V.[4]  *See* Plaintiff's Proposed Findings of Fact, at 9, in Case No. 00-cv-02325-MSK-MEH, attached to Defendant's Motion for Judgment.  Following a seven-day bench trial in the CC&V case in February 2006, District Judge Krieger held, *inter alia*, that plaintiffs had failed to prove that the defendants discharged pollutants without a permit from the Roosevelt Tunnel portal into Cripple Creek. *See* Case No. 00-cv-02325-MSK-MEH, April 13, 2006 Memorandum Opinion and Order, at 38-41.

    Judge Krieger made the following pertinent factual findings in the CC&V action:

> No direct evidence was presented which identified the source of the water that is discharged at the portal, or to the extent it comes from a number of sources, what chemical constituents are contributed by each source.
> 
> . . .
> 
> Water exiting the Roosevelt Tunnel portal has been tested on several occasions.  The parties stipulated that water exiting the culvert attached to the portal contains "chemical constituents."  On November 16, 2006 and August 7, 2001, water samples tested positive for iron, manganese, zinc and other constituents.  However, as with regard to all other water sample data, no evidence was presented to explain the significance of these test results or from which the Court can determine whether the chemical constituents are naturally occurring or the result of human action.

Memorandum Opinion and Order in Case No. 00-cv-02325-MSK-MEH, at 24.

---

[4] In addition, CC&V holds an unpatented mining claim with regard to the property where the Roosevelt Tunnel portal is located. Memorandum Opinion and Order in Case No. 00-cv-02325-MSK-MEH, at 24 n.20.

Judge Krieger then entered judgment in favor of the defendants on plaintiffs' CWA claims because plaintiffs failed to establish that defendants discharged pollutants from the Roosevelt Tunnel portal into Cripple Creek.  Memorandum Opinion and Order, at 39, 41. The District Judge held:

> The Sierra Club repeatedly argues that it is not required to `prove the origin of the pollutants in order to establish liability.' This argument begs the question.  With regard to a non-permit claim, the Sierra Club must establish that there was a discharge of a pollutant into the water – the mere presence of identified chemicals in the water does not constitute a violation of the Clean Water Act because such chemicals could be there naturally.  If water contains a substance in the same amount or degree as naturally occurs in the environment, then it is unlikely that anything has been added or discharged into the water.  Sierra Club has presented no evidence as to whether, what or the degree to which the chemicals or other substances reported in test results are naturally found in the water at the subject locations.  Thus, the Court has no evidence from which it can determine whether any pollutant has been added or discharged into the water.  As a consequence, the Sierra Club has not proved that there has been a violation of the Clean Water Act.

*Id.* at 41.

El Paso now moves for entry of judgment in its favor in the instant action on the basis of collateral estoppel, arguing that plaintiffs may not relitigate Judge Krieger's factual finding that plaintiffs failed to prove the source(s) of the water discharged at the Tunnel portal, and failed to prove what chemical constituents each source contributed.  Defendant contends that Judge Krieger decided that issue against the plaintiffs in the CC&V action when she concluded that plaintiffs failed to prove a discharge of pollutants from the Roosevelt Tunnel portal into Cripple Creek.

II.

A.   Timeliness

Plaintiffs first argue that El Paso has waived the affirmative defense of collateral estoppel by failing to assert it in its Answer or in a timely filed summary judgment motion.[5] Plaintiffs maintain that defendant lacks good cause for failing to raise the defense sooner because the existence of the parallel proceedings placed defendant on notice of the potential defense years ago.

Collateral estoppel is an affirmative defense which must be raised in an Answer. Fed.R.Civ.P. 8(c). However, the Tenth Circuit has held that the purpose behind Rule 8(c) is satisfied where the plaintiff is notified at least three months prior to trial that the defendant intends to claim an affirmative defense, even though the defendant failed to plead the defense. *See Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443-44 (10th Cir. 1992); *Marino v. Otis Engineering Corp.*, 839 F.2d 1404, 1408 (10th Cir.1988).  Here, El Paso raised the collateral estoppel defense four months before trial. Plaintiffs received adequate notice of the defense and do not assert that they have been unduly prejudiced by defendants' motion.

Plaintiffs also rely on *Joseph Manufacturing Co., Inc. v. Olympic Fire Corp.*, 986 F.2d 416, 419-20 (10th Cir. 1993), in support of their argument that defendant's motion is untimely.   In that case, the Tenth Circuit reversed the trial court's order allowing the defendant to assert a preclusion defense after entry of the final pretrial order. The court

---

[5]The original dispositive motions deadline in this case was September 20, 2002.  Following the Tenth Circuit's remand, I set a deadline of June 30, 2006 to file motions concerning discovery and experts.  I did not set an additional dispositive motions deadline.  *See* April 27, 2006 Minute Order.

6

held that the defendant had not met the Fed.R.Civ.P. 16(e) standard for modification of a final pretrial order, even though the state action which defendant relied upon for its preclusive effect argument was not final at the time the pretrial order entered:

> Nothing in Rule 16 prevents a party from identifying a potentially controlling legal principle simply because it is inchoate at the time the pretrial order is drafted. Olympic's counsel knew of the existing state action and its potential effect upon the parties prior to the entry of the federal pretrial order; therefore, his failure to timely raise the defense cuts deeply against his claim of manifest injustice. Indeed, "if the evidence or issue was within the knowledge of the party seeking modification [of the pretrial order] at the time of the [pretrial] conference or if modification would place a great burden on the opposing party, then it may not be allowed." 6A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1527, at 287-89 (1990). Both of those conditions are present in this case. Thus, if any injustice ever arose from these facts, it is the effect of defendant's silence on the plaintiffs.

*Id.* at 419-420.

I find that *Joseph Mfg. Co.* is distinguishable because I have not held a final pretrial conference in this case, nor has a final pretrial order been entered since the Tenth Circuit's remand.

Accordingly, I decline to deny El Paso's Motion for Judgment as untimely.

B.    Merits of Collateral Estoppel Defense

I apply the federal law of collateral estoppel (issue preclusion) because the issue which defendant seeks to prevent plaintiffs from litigating arises from a prior federal court judgment. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197-98 (10th Cir. 2000); *Orjias v. Stevenson*, 31 F.3d 995, 1010 (10th Cir. 1994).

"[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443 (1970).  In *Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Foundation,* 402 U.S. 313, 328-29 (1971), the Supreme Court eliminated the mutuality requirement thereby allowing a defendant to use collateral estoppel to preclude a plaintiff from relitigating an issue decided against the plaintiff in a prior court action involving a different defendant.  *See, also, Allen v. McCurry,* 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.")

The doctrine of issue preclusion protects litigants from the expense and vexation of attending multiple lawsuits where the opposing party had a prior opportunity to litigate, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.  *Montana v. U.S.*, 440 U.S. 147, 153-54 (1979).

Collateral estoppel applies where the party seeking to establish the defense proves the following elements: (1) the issue decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  *Dodge*, 203 F.3d at 1198 (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992)).

It is not disputed that the third and fourth elements of issue preclusion have been met here. Accordingly, I focus my inquiry on the first and second elements.

I first consider whether the issues are identical.

The Tenth Circuit has adopted the Restatement (Second) of Judgments suggesting that a number of factors are relevant in determining whether an issue decided in a prior action is identical to one presented in a later proceeding:

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?

*B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 663 (10th Cir. 2006) (quoting Restatement (Second) of Judgments § 27 cmt. c). Where these questions can be answered in the affirmative, it is likely that the "issue" involved in the two proceedings is the same. *Id.*

To prevail on a claim under the Clean Water Act, the plaintiffs must prove: (1) the discharge (2) of a pollutant (3) into navigable waters (4) from a point source (5) without a permit. *Sierra Club,* 421 F.3d at 1142. Specifically, plaintiffs must establish that pollutants discharged from the El Paso shaft into the Roosevelt Tunnel make their way to the Tunnel portal where they are then discharged into Cripple Creek.[6] *Sierra Club*, 421 F.3d at 1146.

---

[6]The El Paso shaft and the Roosevelt Tunnel portal are "point sources" and Cripple Creek is a "navigable water" as those terms are defined under the Clean Water Act. *Sierra Club*, 421 F.3d at 1146 and n.6.

In other words, plaintiffs must prove a hydrological connection between the pollutants discharged at the El Paso shaft and the pollutants discharged at the Tunnel portal. *Id.*

Plaintiffs' evidence supporting its CWA claim against El Paso in the instant action substantially overlaps the evidence supporting its claim against the CC&V defendants in the prior litigation. In that case, plaintiffs asserted that the CC&V defendants were discharging pollutants (zinc and manganese) from the El Paso shaft into Cripple Creek via the Roosevelt Tunnel without an NPDES permit. *See* Memorandum Opinion and Order in Case No. 00-cv-02325-MSK-MEH, at 5. The alleged point source, pollutants, and navigable waters are the same in both actions. The only difference in the plaintiffs' claims is the basis of the various defendants' liability – in the CC&V action, plaintiffs claimed that defendants were liable because the El Paso shaft lies within the mine permit boundary; here, plaintiffs seek to hold El Paso liable as the owner of the real property containing the El Paso shaft.

In the CC&V action, Judge Krieger found that the plaintiffs failed to present direct evidence to establish the source(s) of the water discharged at the Tunnel portal, and what chemical constituents each source contributed.[7] Stated otherwise, Judge Krieger implicitly found that plaintiffs failed to present sufficient evidence that the water discharged at the

---

[7]The District Judge did not allow two of plaintiffs' experts to testify at trial under F.R.E. 702, after hearings pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See* Contingent Motion to Exclude Plaintiffs' Expert Witness Opinions . . . filed June 30, 2006, and attached Exs. 4, 7. Plaintiffs represent in their Response brief that they did present evidence on the issue of the requisite hydrological connection between the El Paso shaft and Cripple Creek in the CC&V proceeding, but that the District Judge did not discuss or analyze that evidence in her decision. *See* Plaintiff's Response, at 9, n.2 (discussing evidence presented at trial).

Tunnel portal originated from the El Paso shaft, or that it contained pollutants discharged from the El Paso shaft.[8]

In this case, the record from the summary judgment proceeding established that "at least some of the water from the El Paso shaft reaches the [Roosevelt Tunnel] portal." *Sierra Club*, 421 F.3d at 1149. The issue remaining for trial is whether pollutants coming from the shaft water are ever discharged at the portal. *Id.*

Accordingly, Judge Krieger's finding in the CC&V action that plaintiffs failed to present evidence about the source of the water discharged at the Tunnel portal is not binding on the plaintiffs in this case because plaintiffs have already established that some of the water at the Tunnel portal comes from the El Paso shaft. However, Judge Krieger's finding that plaintiffs failed to present sufficient evidence in the CC&V action to establish the source of any <u>pollutants</u> discharged at the Tunnel portal may have preclusive effect here because that finding addressed the "hydrological connection" issue to be litigated at trial. Collateral estoppel may preclude relitigation of an issue decided based on insufficient evidence. *See Yates v. U.S.*, 354 U.S. 298, 335-336 (1957), *over-ruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978); *Highlands Ins. Co. v. Celotex Corp.*, 743 F.Supp. 28, 31 (D.D.C. 1990).

Assuming that the issues in the two proceedings are identical, I consider whether the issue litigated in the CC&V litigation was essential to the court's decision. *Yates*, 354 U.S. at 336; *see, also*, *Murdock*, 975 F.2d at 687("Adjudication on the merits requires that

---

[8]Judge Krieger did not make a specific finding in the CC&V action about whether pollutants were being discharged from the El Paso shaft into the Roosevelt Tunnel.

11

the adjudication be necessary to the judgment")(citing *Block v. Commissioners*, 99 U.S. 686, 693 (1878));  *Segal v. American Tel. & Tel. Co.,* 606 F.2d 842, 845 n.2 (9th Cir. 1979)("For the purpose of issue preclusion (collateral estoppel) . . . relitigation of an issue presented and decided in a prior case is not foreclosed if the decision of the issue was not necessary to the judgment . . ."); *Insurance Co. of North America v. Norton*, 716 F.2d 1112, 1115 (7th Cir. 1983)(It is axiomatic that a party will be precluded by collateral estoppel from relying on an argument only where the determination as to the argument relied on was essential to the judgment in a prior action"); Restatement (Second) of Judgments §27 cmt. j (1982)(a court's determination of an issue that "was actually recognized by the parties as important and by the trier as necessary to the first judgment" has preclusive effect in a subsequent action involving one of the same parties).

In the CC&V action, Judge Krieger concluded that plaintiffs failed to prove the first two elements of a CWA violation - the discharge of a pollutant.  The Clean Water Act defines "discharge of a pollutant" as the "addition of any pollutant to navigable waters from any point source."  33 U.S.C. §1362(12).  In her conclusions of law, Judge Krieger analyzed a series of federal cases defendants cited in an April 8, 2005 Brief on Elements of Claims and Defenses;  the cases are primarily from other circuits and they focus on the source of pollutants in determining whether there was an "addition" of pollutants to water. Memorandum Opinion and Order in 00-cv-2325-MSK-MEH, at 40-41.  Judge Krieger reasoned that the cases cited stood for the general proposition that "a pollutant is added to water when its presence in the water is caused by human action and it did not otherwise

naturally occur in the water to the same degree."[9]  *Id.* at 41   Judge Krieger then ruled that plaintiffs failed to prove that the CC&V defendants had discharged a pollutant from the Roosevelt Tunnel portal into Cripple Creek without a permit.  *Id.*  The specific holding bears repeating:

> Sierra Club has presented no evidence as to whether, what or the degree to which the chemicals or other substances reported in test results are naturally found in the water at the subject locations.  Thus, the Court has no evidence from which it can determine whether any pollutant has been added or discharged into the water.  As a consequence, the Sierra Club has not proved that there has been a violation of the Clean Water Act.

Memorandum Opinion and Order in 00-cv-2325-MSK-MEH, at 41.

Judge Krieger's decision in the CC&V action was based on her narrow factual finding that plaintiffs failed to present any evidence about whether the zinc and manganese found in the water exiting the Roosevelt Tunnel into Cripple Creek occurred naturally or because of human action.  Judge Krieger's separate factual finding that plaintiffs failed to present "direct" evidence about the source(s) of any chemical constituents contained in water discharged at the Tunnel portal was not essential to her decision because the decision did not encompass that next level of inquiry. Judge Krieger focused her decision solely on the plaintiffs' failure to show that the presence of zinc and

---

[9]The Tenth Circuit held in *Sierra Club* that the "addition/discharge" requirement "is satisfied by the contemporaneous introduction of polluted water from El Paso's property, through a point source owned and maintained by El Paso, to a navigable stream, Cripple Creek." 421 F.3d at 1144.  Plaintiffs' evidence in the summary judgment proceeding showed that water samples taken at the El Paso shaft contained zinc and manganese.  *Id.* at 1149 and n.8.  Accordingly, plaintiffs establish a "discharge" in this case by proving that pollutants coming into the Roosevelt Tunnel from the El Paso shaft make their way to the Tunnel portal and then exit the portal into Cripple Creek.

manganese at the Tunnel portal was the result of <u>any</u> human action; she did not rely upon any further factual findings about the potential sources of such human action.

Notably, discussing some of plaintiffs' other claims, Judge Krieger concluded in the very next paragraph of her Memorandum Opinion and Order: "[W]ith regard to the alleged non-permit discharges from the sediment ponds, Moffat Tunnel Cribbing Wall and Squaw Gulch Pond, the Sierra Club has not proved a hydrological connection between the observed water flows and the alleged point sources." *See* Memorandum Opinion and Order in 00-cv–2325-MSK-MEH, at 41. Judge Krieger expressly relied on the absence of a hydrological connection to dismiss some of the plaintiffs' CWA non permit claims, but she did not use or rely upon a lack of a hydrological connection as her rationale for dismissing claims involving the Roosevelt Tunnel.

In its Reply brief, El Paso essentially argues that I should ignore the basis for Judge Krieger's decision and give collateral estoppel effect to her ultimate conclusion that the plaintiffs failed to prove an unpermitted "discharge of pollutants" from the Roosevelt Tunnel portal into Cripple Creek, in violation of the CWA. I reject that argument because the issue decided must be properly defined to be given preclusive effect. *See Dodge*, 203 F.1198-99 (reversing district court's order granting summary judgment applying collateral estoppel offensively against plaintiffs on issue of negligence where jury's general finding under negligence instruction in first action failed to identify what the jury found sustained by the evidence; thus, court in second action should not have concluded that the issue resolved in the first proceeding was identical to the issue in the present action).

For the reasons set forth above, I find and conclude as a matter of law that to the extent the issue determined in the CC&V action was identical to the hydrological connection issue presented here, that issue was not essential to Judge Krieger's decision to enter judgment in favor of the CC&V defendants on the plaintiffs' CWA claim. Collateral estoppel does not bar plaintiffs from litigating the hydrological connection issue in the instant action, or from litigating their CWA claim.[10]

Accordingly, it is

**HEREBY ORDERED** that Defendant's Motion for Judgment on the Basis of the Doctrine of Collateral Estoppel, filed June 30, 2006, is **DENIED**.

Dated August 10, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge

---

[10] I note that if El Paso had shown that the issue was necessarily adjudicated against plaintiffs in the CC&V action, the pendency of an appeal in the prior litigation does not prevent application of collateral estoppel, as long as the appeal does not require a full trial de novo.  See Ruyle v. Continental Oil Co., 44 F.3d 837, 846 (10th Cir. 1994). Plaintiffs' deadline for filing an appeal in the CC&V litigation has been stayed pending the court's determination of the defendants' motions for attorneys' fees. See May 11, 2006 Order in Case No. 00-cv-02325-MSK-MEH.