IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-cv-02163-BNB-MEH

SIERRA CLUB and
MINERAL POLICY CENTER,

     Plaintiff(s),

v.

EL PASO PROPERTIES, INC.,

     Defendant(s).

---

ORDER RE: DEFENDANT'S MOTION TO DISMISS
PLAINTIFF MINERAL POLICY CENTER FOR LACK OF STANDING

---

Boyd N. Boland, United States Magistrate Judge

     This is a citizen suit under the Clean Water Act.  Jurisdiction exists under 33 U.S.C. §1365(a) and 28 U.S.C. §1331. The parties have consented to determination of this case by a United States Magistrate Judge under 28 U.S.C. §636(c).[1]  The matters before me are: (1) Defendant's Motion to Dismiss Plaintiff Mineral Policy Center for Lack of Standing (Doc. #216), filed November 17, 2006; and (2) Motion for Ruling on Mineral Policy Center Standing (Doc. #217), filed November 17, 2006).

I.

     Under Article III of the Constitution, a federal court may adjudicate only an actual case or controversy.  The purpose of the standing requirement is to determine "[w]hether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial

---

[1]This case was originally referred to Magistrate Judge Patricia A. Coan upon the parties' consent to disposition by a magistrate judge.  On September 26, 2006, the case was reassigned to me.

resolution of the controversy." *Sierra Club v. Morton*, 405 U.S. 727, 730 (1972).  The party seeking to invoke a federal court's jurisdiction bears the burden of establishing standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Article III standing can be raised at any time in the judicial process because it bears on the court's subject matter jurisdiction.  *ANR Pipeline Co. v. Corporation Com'n of State of Oklahoma,* 860 F.2d 1571, 1578 (10th Cir. 1988)(citing *Juidice v. Vail*, 430 U.S. 327, 331 (1977)).

II.

Magistrate Judge Coan ruled on plaintiffs' Article III standing in her Memorandum Opinion and Order dated November 15, 2002, addressing the parties cross motions for summary judgment.[2]  The court concluded that the plaintiffs have standing to bring this citizen suit on behalf of themselves, as public interest organizations,[3] and their members.[4] Memorandum Opinion and Order [Doc. #95, filed 11/15/2002], at 7-10.

Defendant El Paso Properties, Inc., ("El Paso"), emphasizes that in the

---

[2]The parties filed cross motions for summary judgment concerning the defendant's liability for violating the Clean Water Act. Plaintiffs also moved for summary judgment on their constitutional standing to bring this action.

[3]An organization has standing to sue in its own right for injuries it has sustained if the organization  can demonstrate that: (1) it has suffered an "injury in fact"; (2) that is "fairly traceable to the challenged action of the defendant"; and, (3) that is likely to be redressed by a favorable decision.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *Friends of the Earth, Inc. v. Laidlaw Env'tl Services, Inc.*, 528 U.S. 167, 180-81 (2000).

[4]An organization has representational standing to bring suit on behalf of its members if: (1) the organization's members would have standing to sue on their own; (2) the interests the organization seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires individual participation by its members. *Friends of the Earth*, *Inc.*, 528 U.S. at 181.

2

Memorandum Opinion and Order of November 15, 2002, Magistrate Judge Coan did not

consider evidence about whether Mineral Policy Center has members sufficient to confer

associational standing under federal law.  The court did not consider evidence about the

members of the Mineral Policy Center because the defendant did not raise the issue.

Indeed, El Paso did not assert any challenge to the plaintiffs' standing, in either its

Response In Opposition to Plaintiffs' Motion for Summary Judgment, filed October 10,

2002, or in its Motion for Summary Judgment, filed September 20, 2002.[5]  Accordingly,

Magistrate Judge Coan relied on the uncontested allegations in plaintiffs' complaint that

one of the Mineral Policy Center's purposes is to "protect[ ] communities and the

environment by preventing the environmental impacts associated with mining and mineral

developments, and by cleaning up pollution caused by mining,"[6] and the verified and

unchallenged statements of Marilyn Fay, Dan Randolph, Bill Clymer, and Kirby Hughes[7]

that they were members of the Mineral Policy Center at the time this action was filed, and

that their recreational and aesthetic interests had been harmed as a result of the

unpermitted discharge of pollutants from the El Paso shaft into Cripple Creek via the

Roosevelt Tunnel, in concluding that the Mineral Policy Center and its members had

---

[5]I note that the defendant likewise did not challenge the Mineral Policy Center's standing in its appeal of the trial court's entry of summary judgment in plaintiffs' favor on the issues of standing and liability.  *See Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133 (10th Cir. 2005).

[6]Complaint, p. 4, at ¶8.

[7]*See* Plaintiffs' Motion for Summary Judgment on the Issue of Standing and Liability, filed September 20, 2002, Exs. 39, 40, 42 and 43.

3

suffered an injury-in-fact sufficient to confer standing on the organization to sue in its own right and in a representational capacity.[8]

El Paso now argues that the Mineral Policy Center did not have members that possessed the indicia of membership necessary to confer Article III standing when this case was filed in 2001,[9] as evidenced by the Mineral Policy Center's Articles of Incorporation and Bylaws. The Mineral Policy Center's Articles of Incorporation state that "[t]he Corporation shall have no members." (Motion to Dismiss, Ex. 1, at 5) The Bylaws allow the Board of Directors to "designate as members those persons (individuals or entities) who have made contributions or grants to the Corporation"; however, the Bylaws also provide that "[s]uch so-called members shall not be entitled to vote or to participate in the management of the Corporation's affairs." (*Id.*, Ex. 2, at 6)

An organization that lacks formal members has standing to sue in a representative capacity if the individuals it calls members "possess all of the indicia of membership in an organization." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 344-45 (1977). Such indicia of membership include the ability to elect the governing body of the organization, the ability to serve as a member of the governing body, and the ability to finance the organization. *Id.*

---

[8]Magistrate Judge Coan also found that plaintiffs had proffered other evidence to satisfy the causation and redressability requirements of standing. *See* Memorandum Opinion and Order dated November 15, 2002, at 8-10.

[9]Standing is determined at the time the action is filed. *Nova Health System v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). Notwithstanding, plaintiffs' counsel advised defense counsel that Mineral Policy Center has not amended its Articles of Incorporation or Bylaws since this action commenced. Motion to Dismiss, at 4.

Plaintiffs argue that because Sierra Club's standing is undisputed, it is unnecessary for the court to hear evidence about the Mineral Policy Center's standing to sue in a representative capacity.[10]   Plaintiffs rely on established Supreme Court jurisprudence holding that where one plaintiff group has met the standing requirements, the court need not consider the standing of the other plaintiffs, where all plaintiffs are asserting the same claims for relief.  *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986)("It is clear that members of the Union, one of whom is an appellee here, will sustain injury by not receiving a scheduled increase in benefits. . . This is sufficient to confer standing under . . . Article III. We therefore need not consider the standing issue as to the Union or Members of Congress"); *Secretary of Interior v. California*, 464 U.S. 312, 319 n.3 (1984)(recognizing that because the State of California "clearly does have standing" to sue  under §307(c)(1) of the Coastal Zone Management Act, the Court need not address the standing of the environmental groups and local governments "whose position here is identical to the

---

[10]Plaintiffs also emphasize that the defendant does not challenge the court's prior ruling that the Mineral Policy Center has Article III standing to sue in its own right.  Plaintiffs thus contend that the Mineral Policy Center's standing to sue on its own behalf is sufficient, regardless of whether it can also meet the requirements of representational standing. Plaintiffs maintain that the  Mineral Policy Center has standing to bring this Clean Water Act citizen suit, as a non-profit environmental organization with the mission of protecting the environment from illegal pollution, and through its members, and that they are prepared to present substantial evidence in support of the Mineral Policy Center's standing at trial if required to do so.

El Paso argues in response that the Mineral Policy Center's Articles of Incorporation do not identify protecting the environment as a purpose or interest of the organization.  Instead, the Articles of Incorporation state that the Mineral Policy Center is "organized exclusively for charitable and educational purposes," including the following: to study the "impact of mineral policies and development on other public resources and the environment"; "to serve as a clearinghouse for information relating to the management and development of mineral resources"; to "disseminate the results of its research and studies"; and "to conduct educational activities on the manner in which the Nation's mineral resources have been managed and developed."  (Motion to Dismiss, Ex. 1)

I do not resolve issues concerning El Paso's new challenge to the Mineral Policy Center's standing to sue in its own right for the reasons discussed in the text above, *infra*.

State's"); *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998)("Because both the City of New York and the health care appellees have standing, we need not consider whether the appellee unions also have standing to sue")(citing *Bowsher*); *see, also, Guam Soc. of Obstetricians and Gynecologists v. Ada,* 962 F.2d 1366, 1369 (9th Cir. 1992)(holding that because some of the seven plaintiffs had standing to challenge statute enacted by Territory of Guam outlawing almost all abortions, it was not necessary to determine the standing of the other plaintiffs); *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir. 2006)("So long as one party has standing, other parties may remain in the suit without a standing injury,"citing *Clinton v. City of New York*).

El Paso argues that the appellate court cases relied on by plaintiffs are inapposite because the role of a district court is "that of being a gatekeeper to the federal judiciary," while appellate courts primarily decide questions of law and defer to the factual findings of the district court. El Paso's Response to Plaintiff's Motion for Ruling on Standing, at 2. The defendant thus maintains that "[t]his court has an obligation to consider the question of standing where, as here, undisputed evidence is before it to support a challenge." *Id.* at 2-3.

The general rule is that Article III standing must be extant at all stages of litigation. *See Gollust v. Mendell*, 501 U.S. 115, 126 (1991)("[T]he plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course")(internal citation omitted); *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1485 (10th Cir. 1995) (determining on appeal that plaintiff no longer had standing). Thus, the appellate courts have the same obligation to address litigant standing as the trial courts. In any event,

several district courts have recognized, under the authority of *Bowsher* and *Secretary of the Interior*, that  where at least one of the plaintiffs in a plaintiff group has standing, the court need not determine the standing of the other plaintiffs, if all plaintiffs have presented the same substantive claims and arguments to the court throughout the litigation and request the same relief.  *See, e.g., Beartooth Alliance v. Crown Butte Mines*, 904 F.Supp. 1168, 1171 (D.Mont. 1995); *Thorsted v. Gregoire*, 841 F.Supp. 1068, 1073 (W.D.Wash, 1994); *PSINet, Inc. v. Chapman*, 108 F.Supp.2d 611, 620 (W.D.Va. 2000); *Coalition on Sensible Transp., Inc. v. Dole,* 642 F.Supp. 573, 583 n.2 (D.D.C. 1986); *Crowell v. Ionics, Inc.*, 343 F.Supp.2d 1, 14 (D.Mass. 2004).

El Paso does not dispute,[11] and Magistrate Judge Coan previously ruled, that plaintiff Sierra Club has Article III standing to litigate this action. Because Sierra Club and the Mineral Policy Center are represented by the same counsel, raise the same Clean Water Act claims, and have presented their arguments to the court jointly throughout these proceedings, there is no need to revisit the issue of the Mineral Policy Center's standing. *See Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735*, 744 (10th Cir. 2005)(declining to address defendant's argument that plaintiff SUWA lacked standing to challenge the defendant Counties' purported rights of way because the BLM, which had Article III standing, raised the same claims and sought the same relief as SUWA; thus, "a decision on SUWA's standing "would in no way avoid resolution of the

---

[11]El Paso stipulated during the status conference on August 15, 2006, that Sierra Club has standing to litigate this Clean Water Act citizen suit.  *See* Minute Order [Doc. #197, filed 8/15/2006].  At the status conference on October 17, 2006, I ordered the parties to file any motions concerning dismissal of the plaintiffs for lack of standing by November 17, 2006.  *See* Courtroom Minutes [Doc. #215, filed 10/17/2006].  El Paso has not challenged Sierra Club's standing in its Motion to Dismiss.

relevant issues," citing *Secretary of the Interior v. California*); *Campbell v. Buckley*, 203 F.3d 738, 740 (10th Cir. 2000)("Because the individual plaintiffs are proponents of past and present initiatives and have standing, and because all plaintiffs are represented by the same counsel and jointly raise the same substantive arguments on appeal, we decline to address the standing issue. In these circumstances there is no need to address the standing of the institutional plaintiffs," citing *Bowsher* and *Secretary of the Interior v. California*).   Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss Plaintiff Mineral Policy Center for Lack of Standing (Doc. #216), filed November 17, 2006, is **DENIED**.[12]  It is

**FURTHER ORDERED** that Plaintiffs' Motion for Ruling on Mineral Policy Center Standing (#217), filed November 17, 2006, is **GRANTED**, as set forth above.

Dated January 5, 2007.

BY THE COURT:

s/ Boyd N. Boland
BOYD N. BOLAND
United States Magistrate Judge

---

[12]Based on my ruling above, I find it unnecessary to address the defendant's argument that the court should apply collateral estoppel to dismiss Mineral Policy Center for lack of standing, based on District Judge Krieger's April 13, 2006 ruling dismissing the Mineral Policy Center for lack of standing in *Sierra Club v. Cripple Creek & Victor Gold Mining Co.*, Civil Action No. 00-cv-02325-MSK-MEH.

8