IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 01-cv-02163-BNB-MEH

SIERRA CLUB, and
MINERAL POLICY CENTER,

    Plaintiffs

v.

EL PASO PROPERTIES, INC.,
(formerly known as EL PASO GOLD MINES, INC.)

    Defendant.
_____

**ORDER**
_____

This matter is before me on **El Paso's Motion for Attorney Fees and Litigation Expenses** [Doc. # 255, filed 6/19/2007] (the "Motion"). The Motion is DENIED.

The plaintiffs brought this citizen suit under the Clean Water Act, 33 U.S.C. §§1251 et seq., against El Paso Properties, Inc., formerly known as El Paso Gold Mines, Inc. ("El Paso"). El Paso owns approximately 100 acres of inactive mining claims and surface rights in Teller County, Colorado, including the property through which the El Paso Shaft passes before it enters the Roosevelt Tunnel. The plaintiffs alleged that El Paso violated section 402 of the Clean Water Act, 33 U.S.C. § 1342, by discharging pollutants from a point source into navigable waters without a valid permit. Specifically, the plaintiffs claimed that measurable concentrations of zinc, manganese, sulfate, and aluminum contained in water entering the Roosevelt Tunnel from the El Paso Shaft were transported through the tunnel to the Roosevelt Tunnel Portal and discharged into Cripple Creek.

The case was tried to the court for five days beginning on February 5, 2007. On June 4, 2007, I entered my Memorandum Opinion and Order [Doc. # 253, filed 6/4/2007] (the "Order"), finding for El Paso and against the plaintiffs and directing that judgment enter in favor of El Paso. My decision was based on the plaintiffs' failure to establish a baseline water quality. Without proof of a baseline, the plaintiffs could not establish the discharge of any pollutants at the Portal. I found:

> The sole evidence offered by [p]laintiffs to establish the baseline water quality for purposes of their natural tracer theory is a single water sample taken . . . at a location designated as RT-EP 4000. . . . [The plaintiffs'] natural tracer theory, however, depends on precisely that distinction--that the sample at RT-EP 4000 reflects baseline water quality without any added pollutants from the El Paso Mine because it originated from a granite seep, while the other two samples reflect water entering the Tunnel from the Shaft and containing pollutants from the El Paso Mine.
>
> \* \* \*
>
> The record lacks credible evidence from which I can reliabl[y] conclude that the sample at RT-EP 4000 came from a seep in the granite wall of the Roosevelt Tunnel. Without that evidence, [p]laintiffs have failed to establish the baseline water quality, and their natural tracer theory collapses because they cannot distinguish the water quality at the Portal from the baseline water quality.

Order at pp.22-24.

The plaintiffs also attempted to establish the baseline water quality based on samples taken from groundwater wells in the Mining District. I excluded the groundwater well evidence, however, because the plaintiffs had failed to lay a sufficient foundation as to its authenticity. Id. at p.24.[1]

---

[1] I agree with the plaintiffs' characterization that I "ultimately determined at trial that [p]laintiffs introduced less than a preponderance of the evidence on one of the elements of their case." Plaintiffs' Response In Opposition to El Paso's Motion for Attorney Fees and Litigation Expenses [Doc. # 275, filed 7/30/2007] (the "Response") at p.1.

El Paso has moved for an award of its attorney fees under 33 U.S.C. § 1365(d), which provides that "[t]he court . . . may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."

Under the American Rule, litigants ordinarily must pay their own attorney fees absent legislation providing otherwise. Christianburg Garment Co. v. EEOC, 434 U.S. 412, 415 (1978); Sierra Club v. City of Little Rock, 351 F.3d 840, 845-46 (8th Cir. 2003). Section 1365(d) of the Clean Water Act is such a fee shifting provision. Sierra Club, 351 F.3d at 845.

In Browder v. City of Moab, 427 F.3d 717, 721 and n.3 (10th Cir. 2005), the Tenth Circuit Court of Appeals held that, in connection with a fee application under the Clean Water Act, a prevailing plaintiff should recover its attorney fees unless special circumstances render such an award unjust, but "prevailing defendants are only to be awarded attorney's fees when the plaintiff's claim is 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so,'" citing Hensley v. Eckerhart, 461 U.S. 424, 429 (1976), and Christianburg Garment, 434 U.S. at 422.[2]

---

[2]El Paso does not disagree, and acknowledges in its motion:

> The Supreme Court has held that Congress, through its use of the phrase "any prevailing or substantially prevailing party," gave courts the discretion to award fees to prevailing defendants and prevailing plaintiffs. See Christianburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 416 n.7 (1978) (including the [Clean Water Act] in a list of statutes authorizing the award of legal fees to either party).
>
> Federal courts have held that prevailing plaintiffs acting as private attorneys general should ordinarily recover attorney fees unless special circumstances would render such an award unjust. Hensley

Applying these standards, I find that the plaintiffs' claim was not frivolous, unreasonable, or groundless, nor did the plaintiffs continue to litigate after it clearly became so. To the contrary, the plaintiffs' claim ultimately was tried to the court on the merits for five days and was supported by expert testimony and other evidence. The plaintiffs presented considerable evidence at trial in support of their case, and I find that they proceeded in a good faith belief that they had reasonable legal and factual bases for their claim. In the end the plaintiffs failed to establish a baseline water quality, but the fact that the plaintiffs lost their Clean Water Act claim does not, in itself, justify a fee award. See Tungett v. Papierski, 2007 WL 2156345 at *2 (E.D. Tenn. 2007). As the Supreme Court noted in Christianburg Garment, 434 U.S. at 421-22:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.
>
> \* \* \*
>
> To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions [of the law].

---

v. Eckerhart, 461 U.S. 424, 429 (1983); Browder v. City of Moab, 427 F.3d 717, 721 (10th Cir. 2005). By contrast, prevailing defendants in citizen's suits are only to be awarded attorney's fees when the plaintiff's claim is "frivolous, unreasonable, or groundless, or [] the plaintiff continued to litigate after it clearly became so." Christianburg Garment Co., 434 U.S. at 422; Browder, 427 F.3d at 721.

Motion at pp.1-2.

4

El Paso's principal argument in support of its claim for attorney fees is that the plaintiffs continued to litigate their Clean Water Act claim after it became clearly groundless. El Paso argues:

> Plaintiffs were aware of these flaws [i.e., that they could not prove a baseline water quality and that they could not explain anomalous fluctuations in the levels of zinc measured in the water] long before trial but failed to address them before or during trial. The record in this case and related state and federal cases demonstrates that [p]laintiffs' claim--that pollutants from the El Paso shaft flow through the Roosevelt Tunnel into Cripple Creek--lacked merit because it could not be proven by the available evidence. Plaintiffs continued to litigate after becoming aware they had insufficient evidentiary support for their claim and that no further evidentiary support could be obtained due to the unsafe condition of the Roosevelt Tunnel.

Motion at p.3.

El Paso relies heavily on a ruling in the related case of Sierra Club v. Cripple Creek and Victor Gold Mining Co., Civil Action No. 01-cv-02307-MSK-MEH, in support of their argument for attorney fees. In the that case, the district judge ruled on April 13, 2006, as follows:

> The Sierra Club repeatedly argues that it is not required to "prove the origin of pollutants in order to establish liability." This argument begs the question. With regard to a non-permit claim, the Sierra Club must establish that there was a discharge of a pollutant into the water--the mere presence of identified chemicals in the water does not constitute a violation of the Clean Water Act because such chemicals could be there naturally. If water contains a substance in the same amount or degree as naturally occurs in the environment, then it is unlikely that anything has been added or discharged into the water. Sierra Club has presented no evidence as to whether, what or the degree to which the chemicals or other substances reported in test results are naturally found in the water at the subject locations. Thus, the Court has no evidence from which it can determine whether any pollutant has been added or

discharged into the water. As a consequence, the Sierra Club has
not proved that there has been a violation of the Clean Water Act.

Sierra Club v. Cripple Creek and Victor Gold Mining Co., 01-cv-02325-MSK-MEH, Memorandum Opinion and Order [Doc. # 127, filed 4/13/2006] at p.41.

I am not persuaded that the events in another suit involving discharges from the Roosevelt Tunnel establish that the plaintiffs continued to litigate their Clean Water Act claim against El Paso after the claim became clearly groundless. In the related action, for example, the district judge in pretrial rulings excluded the expert testimony of Ann Maest and Kenneth Klco, which addressed certain hydrological connections. Sierra Club v. Cripple Creek and Victor Gold Mining Co., 00-cv-02325-MSK-BNB, Order Granting, In Part, Motion for Attorney Fees [Doc. # 345, filed 12/20/2006] at p.4 n.6. By contrast, I admitted Dr. Maest's expert testimony following its full presentation at the trial, Order at pp.18, and Mr. Klco testified as a fact witness. I am not aware of whether the Sierra Club offered or attempted to offer the groundwater well data in the other cases. In any event, as the matter was presented to me, it was reasonable for the plaintiffs to believe that they would be able to establish a baseline water quality; it was reasonable for them to believe that the evidence concerning the water sample taken at RT-EP 4000 would establish that baseline;[3] and it is possible that the groundwater well evidence, if admitted, might have

---

[3]David Akers testified that it was his belief that the critical water sample taken at RT-EP 4000 was taken from a granite seep in the tunnel. Transcript of Proceedings [Doc. # 251, filed 5/14/2007] ("Trans.") at p.945 lines 4-10; Order at pp.23-24. That testimony, if credited, in conjunction with the analysis of the water sampled, could have established a baseline water quality. I was not persuaded of the origin of the sample, however, in view of the distant time of the meeting (June 2001) at which Mr. Aker's belief was formed, Trans. at p.960 lines6-11, and the weakness of Mr. Aker's memory about other important facts concerning the sample which were brought out in cross-examination. Id. at pp.960-64. The plaintiffs could not have known in advance of trial the weight I would give Mr. Aker's testimony, and they acted reasonably in proceeding based on their perception of the strength of that evidence.

6

established a baseline. The plaintiffs did not know prior to trial that the groundwater well evidence would be excluded.

El Paso also argues that equitable considerations militate in favor of the award of their attorney fees. In particular, El Paso argues:

> El Paso bears little resemblance to the large, financially profitable corporate defendants against which most Clean Water Act citizen's suits are brought. El Paso has never conducted mining or any other activity on its property and has no ongoing operations today. El Paso is not a successor to any company that conducted mining operations. El Paso is a closely-held family corporation that was formed in 1968, four years before the Clean Water Act was passed, for the sole purpose of buying one hundred acres of mining claims in Teller County, Colorado.
>
> * * *
>
> Despite these circumstances, [p]laintiffs forced El Paso to endure through six years of litigation that would have resulted in nothing more than a paper judgment had [p]laintiffs succeeded on their claim. Since El Paso has no cash flow or assets other than its property, El Paso has borrowed hundreds of thousands of dollars to defend itself from [p]laintiffs' citizen suit and is unable to repay these loans. . . .
>
> By contrast, Plaintiff Sierra Club is the best-known environmental organization in the world and has sufficient assets available to ensure the scientific validity of the claims it asserts. . . . Despite these enormous financial resources, [p]laintiffs failed to conduct the necessary scientific investigation to evaluate the source of pollutants at the Roosevelt Tunnel portal.

Motion at pp14-15 (internal citations omitted).

El Paso provides no authority indicating that I may consider these equitable factors in deciding whether to award its attorney fees under section 1365(d), nor am I aware of any. The plaintiffs cite Roth v. Green, 466 F.3d 1179, 1194 (10th Cir. 2006), however, where the circuit court stated in connection with a fee application under 42 U.S.C. § 1988 that a party's "ability to

7

pay is not a proper factor to consider in determining *whether* to award attorneys' fees against [it], but may be considered when determining *the amount* of the attorneys' fees to be awarded against that party."

Applying the applicable standard--that a prevailing defendant in a citizen suit under the Clean Water Act may be awarded its attorney fees only when the plaintiffs' claim is frivolous, unreasonable, or groundless, or when the plaintiffs continued to litigate after it clearly became so--I find that there is no basis for the award of attorney fees to El Paso.

IT IS ORDERED that the Motion is DENIED.

Dated March 28, 2008.

                                        BY THE COURT:

                                        s/ Boyd N. Boland
                                        United States Magistrate Judge